IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

AMY D. FRANCISCO,

    Plaintiff,

v.                                               Civil Action No. 3:09cv737

VERIZON SOUTH, INC.,

    Defendant.

## MEMORANDUM OPINION

Before the Court is Plaintiff Amy D. Francisco's ("Francisco") Renewed Motion to Strike. (Docket No. 23.) Defendant Verizon South, Inc. ("Verizon South") has responded (Docket No. 25), and the matter is ripe for disposition. Neither party sought a hearing. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 636(c) and 1332. For the reasons that follow, the Court will GRANT IN PART and DENY IN PART Francisco's Renewed Motion to Strike.

## I. Factual Background

Francisco filed an Amended Complaint in this Court alleging unlawful retaliation by Verizon South after she had complained about incidents of racial discrimination and intimidation at work. (Am. Compl. ¶ 1.) (Docket No. 20.) Specifically, Francisco, an African-American woman, alleges Verizon South: (1) unlawfully retaliated against her by giving her poor performance ratings after she inquired about the discrepancy between the company pay scale and her actual salary (Am. Compl. ¶ 24); (2) subjected her to a display of a photograph of a noose during a company meeting ("the noose incident") (Am. Compl. ¶¶ 26, 30-33, 36); and,

(3) unlawfully terminated her after she requested an investigation of the noose incident (Am. Compl. ¶¶ 36, 45-47).

Francisco alleges the first incident of racial discrimination occurred after Debra Nuckles, a white Verizon South employee, became her supervisor. (*See* Am. Compl. ¶¶ 13-14.) On February 14, 2006, Francisco learned that her compensation fell below the pay scale for her position. (Am. Compl. ¶ 14.) On March 1, 2006, Francisco met with Nuckles and requested that Nuckles adjust Francisco's pay. (Am. Compl. ¶ 18.) Nuckles ignored Francisco's request. (Am. Compl. ¶ 18.) On April 25, 2006 and June 5, 2006, Francisco again requested that Nuckles adjust Francisco's pay to reflect the appropriate salary for her position. (Am. Compl. ¶¶ 20-21.) Nuckles did not adjust Francisco's salary. (Am. Compl. ¶¶ 20-21.) On July 11, 2006, Francisco informed Nuckles that she was interested in the position of District Diversity Lead, but Nuckles did not forward Francisco's request to the appropriate managers, and Francisco was not considered for the District Diversity Lead position. (Am. Compl. ¶ 22.) In November of 2006, Francisco's pay was adjusted to meet the minimum salary requirement for her position. (Am. Compl. ¶ 23.)

On February 15, 2007, Francisco received a "developing" rating on her performance evaluation. (Am. Compl. ¶ 24.) "In mid-2007, Francisco was put on a performance development plan" because Nuckles no longer viewed Francisco as a "'team player.'" (Am. Compl. ¶ 25.)

On October 23, 2007, Francisco attended a conference in Virginia Beach for first- and second-level Verizon South managers. (Am. Compl. ¶ 26.) During an afternoon session at the conference, an African-American manager from the Silver Spring, Maryland office volunteered to hold up cards ordering the audience to "'clap,' 'salute,' 'cheer,' or make similar applauding

noises." (Am. Compl. ¶ 29.) The manager dropped a card and, after picking it up, held the card so that the back of the card faced the audience. (Am. Compl. ¶ 30.) Francisco alleges that the card showed "a photograph of a lynching noose." (Am. Compl. ¶ 30.) Francisco asked several other African-American managers whether they had seen the photograph of the noose. (Am. Compl. ¶ 32.) Francisco, as well as the other African-American managers who saw the noose, "perceived it as a racist symbol and were offended by its display." (Am. Compl. ¶ 32.)

On January 24, 2008, Francisco contends she requested an investigation of the noose incident. (Am. Compl. ¶ 36.) On February 7, 2008, after hearing nothing about the investigation, Francisco contacted Louise Shutler, who informed Francisco that she had forgotten to refer the complaint to the Ethics Group, but would immediately refer it to local management. (Am. Compl. ¶ 42.) On February 13, 2008, Francisco again called Shutler, who told her to expect a phone call from Kenna Ashley. (Am. Compl. ¶ 43.) A few days later, Francisco received a call from Ashley, who informed Francisco that an investigation could take anywhere from two weeks to four months to complete. (Am. Compl. ¶ 44.)

On March 6, 2008, Nuckles informed Francisco that she would be laid off from her position. (Am. Compl. ¶ 45.) Francisco's termination letter informed her that she had 30 days to find another position within the company. (Am. Compl. ¶ 48.)

On March 9, 2008, Francisco learned that a peer was attempting to transfer into another department, but Francisco alleges Verizon neither informed her of this position nor offered the position to her. (Am. Compl. ¶ 49.) Francisco did not obtain other employment with Verizon South.

On March 17, 2008, after she was terminated, Francisco contends she received a voice mail from Ashley stating that Ashley had completed the investigation of the noose incident. (Am. Compl. ¶ 50.)

## II. Procedural History

On November 20, 2009, Francisco filed her Complaint in this Court, alleging unlawful retaliation under both Title VII and 42 U.S.C. § 1981. (Compl. ¶¶ 59, 66.) (Docket No. 1.) Verizon South answered the Complaint and raised a number of affirmative defenses. (Docket No. 6.)

On February 3, 2010, Francisco filed a Motion to Strike (Docket No. 8), contending that the Court should strike certain of Verizon South's affirmative defenses because they failed to meet the federal pleading standard enunciated by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (the "*Twombly-Iqbal* standard") (Pl.'s Mem. Supp. Mot. Strike 1-2) (Docket No. 9). Verizon South responded, arguing that the *Twombly-Iqbal* standard does not apply to a defendant's assertion of affirmative defenses. (Def.'s Opp'n Mot. Strike 2-5.) (Docket No. 12.)

Before the Court ruled on Francisco's motion, however, Francisco sought leave to amend her Complaint. (Mot. Leave File Am. Compl.) (Docket No. 17.) The Court granted Francisco's motion (Docket No. 19), and Francisco filed an Amended Complaint asserting two claims for relief (Docket No. 20). Count One alleges unlawful retaliation pursuant to Title VII, and Count Two alleges unlawful retaliation pursuant to 42 U.S.C. § 1981. (Am. Compl. ¶¶ 58-73.) Francisco's Amended Complaint also adds a claim for punitive damages. (*See* Am. Compl. ¶¶ 62, 70, (g).)

On May 21, 2010, Verizon South filed its Answer to the Amended Complaint. (Docket No. 21.) Verizon South asserts fifteen affirmative defenses ("Affirmative Defenses"), which the Court quotes verbatim:

1. The Amended Complaint fails to state a claim upon which relief can be granted for any of the claims alleged.

2. Verizon South acted in good faith and had reasonable grounds for believing that its conduct did not violate any law and, in fact, its conduct did not violate any law.

3. Verizon South raises an affirmative defense in accordance with the United States Supreme Court decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). At all times relevant to Francisco's Complaint, Verizon South maintained and regularly enforced appropriate policies and practices against discrimination and harassment, exercised reasonable care to prevent and correct promptly any discriminatory behavior and/or harassment or retaliation and maintained effective multi-avenue complaint procedures that were known and available to all employees. Francisco failed to take advantage of the preventative and corrective opportunities provided by Verizon South by failing to complain about the placard with a noose on the reverse side within any reasonable time period after she alleges that she saw the picture of a noose and thereby prevented Verizon South from addressing her complaint in a timely manner.

4. In addition, to the extent Francisco is now making claims of retaliation beyond any reported to Verizon South, those claims are barred because Francisco failed to take advantage of the preventative and corrective opportunities provided by Verizon South or to otherwise avoid the alleged harm.

5. Verizon South has not proximately caused any of the damages Francisco alleges in the Amended Complaint.

6. Francisco's claims under Title VII and Section 1981 for compensatory damages and punitive damages are barred to the extent such claims exceed the statutory limits.

7. The Complaint is barred by the doctrines of waiver and estoppel and/or unclean hands.

8. Verizon South's actions relating to Francisco were based on legitimate, nondiscriminatory business reasons.

5

9. Francisco's claims are barred in whole, or in part, by her failure to mitigate her alleged damages. Specifically, Francisco did not apply for a single Verizon job within the thirty-day window after being notified that she had been selected for a Reduction in Force and before being taken off the payroll and thereby failed to take advantage of possible positions that would have allowed her to maintain a salary and benefits commensurate with her prior position.

10. If Francisco suffered any damages or losses, such damages or losses were caused in whole or in part by Francisco's conduct, acts or omissions to act.

11. Francisco's claims for damages are barred because good faith efforts to comply with all applicable laws, rules and regulations were taken by Verizon South.

12. Francisco is not entitled to any of the relief she seeks.

13. Even if Francisco were able to show that Verizon South retaliated against her, any recovery on the part of Francisco is barred by the after-acquired evidence doctrine because her conduct in lying during a Security Investigation and in leaving work early in order to work at a second job - which was only uncovered during discovery in this case - would have provided Verizon South with a legitimate basis to terminate her employment.

14. None of Verizon South's actions with respect to Francisco's employment constitute malice or reckless indifference towards Francisco's rights under Title VII or Section 1983. Therefore, Francisco is not entitled to punitive damages.

15. Verizon South reserves the right to assert any additional defenses that may become available through the course of discovery or otherwise during the course of this litigation.

(Answer 10-12.) Because Francisco's first Motion to Strike addressed affirmative defenses raised in Verizon South's original Answer, the Court denied the first Motion to Strike as moot and ordered Francisco to renew any such motion no later than June 11, 2010. (Docket No. 22.)

## III. Francisco's Renewed Motion to Strike

### A. Francisco Argues That the *Twombly-Iqbal* Standard Applies to Affirmative Defenses

On June 9, 2010, Francisco filed her Renewed Motion to Strike. (Docket No. 23.) Francisco moves the Court to strike fourteen[1] of Verizon South's fifteen Affirmative Defenses.

Francisco raises two arguments with respect to Verizon South's Affirmative Defenses. First, Francisco contends that the *Twombly-Iqbal* standard extended the pleading requirements of Federal Rule of Civil Procedure 8 to both plaintiffs and defendants, and that Verizon South's Affirmative Defenses fall short of those requirements because "[n]owhere in the pleadings does Defendant allege a single fact in support of its defenses." (Pl.'s Mem. Supp. Renewed Mot. Strike ("Pl.'s Mem."), at 4-8.) Second, Francisco moves the Court to strike Affirmative Defense 3 because Verizon South terminated Francisco's employment, and Verizon South "is therefore unable [by law] to raise the *Ellerth/Faragher* affirmative defense."[2] (Pl.'s Mem. 9.)

---

[1] Francisco does not move the Court to strike Affirmative Defense 1. Francisco's motion moves the Court to strike Affirmative Defenses 2 through 8, and 9 through 15. (Renewed Mot. Strike.) In her supporting memorandum of law, however, Francisco moves the Court to strike Affirmative Defenses 2 through 8, and 10 through 14. (Pl.'s Mem. 4.)

[2] In *Ellerth* and *Faragher*, the Supreme Court held that an employer is subject to vicarious liability to a victimized employee for a hostile environment created by a supervisor with immediate authority over the employee, but that when the employer takes no tangible employment action, the employer may raise an affirmative defense to liability or damages provided that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and the employee unreasonably failed to take advantage of any preventative or corrective opportunities. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807-08. The employer may not assert this affirmative defense if it has taken a tangible employment action against the employee, however. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807-08.

### B. Verizon South Responds That the *Twombly-Iqbal* Standard Does Not Apply, That the *Ellerth/Faragher* Defense Is Relevant, and That Francisco Has Suffered No Prejudice

Verizon South responds first that the *Twombly-Iqbal* standard does not impose any additional pleading requirements on affirmative defenses asserted pursuant to Rule 8(c). (Def.'s Opp'n Pl.'s Mot. Strike ("Def.'s Opp'n"), at 4-7.) (Docket No. 25.) Verizon South contends that an affirmative defense need only give the plaintiff fair notice of the nature of the defense, and that Verizon South does not need to "make any factual 'showing' that it will prevail on its defenses." (Def.'s Opp'n 5-6.)

Second, Verizon South admits that the *Ellerth/Faragher* defense "is not a bar to Francisco's retaliation claim." (Def.'s Opp'n 7.) Verizon South argues, however, that "[a]s part of her ultimate burden on her retaliation claim, Francisco must either prove that Verizon South engaged in an actual unlawful employment practice or that Francisco objectively believed that Verizon South engaged in an unlawful employment practice." (Def.'s Opp'n 8.) Accordingly, Verizon South contends the *Ellerth/Faragher* defense "is probative on whether she can meet her ultimate burden," and should not be stricken. (Def.'s Opp'n 7-8.)

Finally, Verizon South asserts that Francisco has failed to show prejudice as a result of Verizon South's pleadings. (Def.'s Opp'n 8-10.) Verizon South contends that, "[g]iven that she has only asserted one claim for relief in her Amended Complaint (retaliation), there can be no confusion as to which claims Verizon South's affirmative defenses are directed," and that "Francisco's Amended Complaint makes clear that Francisco is 'on notice' of the factual underpinnings of these defenses." (Def.'s Opp'n 9.) Accordingly, Verizon South contends that Francisco has failed to show that she will suffer prejudice if the Court does not strike the asserted Affirmative Defenses.

### C. Francisco Contends That This Court Should Reach the Same Holding as the Western District of Virginia

In reply, Francisco asserts that since the date she filed her motion, the United States District Court for the Western District of Virginia has ruled that the *Twombly-Iqbal* standard applies to a defendant's pleading of affirmative defenses. (Pl.'s Reply Mem. Supp. Renewed Mot. Strike ("Pl.'s Reply"), at 1-2; *see Palmer v. Oakland Farms, Inc.*, No. 5:10cv00029, 2010 WL 2605179 (W.D. Va. June 24, 2010).) Francisco contends Verizon South's Affirmative Defenses mirror those struck by the court in *Palmer*, and that therefore, Verizon South's Affirmative Defenses also should be stricken. (Pl.'s Reply 3-5.)

## IV. Standard of Review

Rule 12(f) allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion serves as "the primary procedure for objecting to an insufficient defense." 5C *Charles Alan Wright & Arthur Miller, Federal Practice and Procedure* § 1380 (3d ed. 2004) (hereinafter "5C *Wright & Miller*").

When reviewing a motion to strike, "the court must view the pleading under attack in a light most favorable to the pleader." *Clark v. Milam*, 152 F.R.D. 66, 71 (S.D. W. Va. 1993). To grant a Rule 12(f) motion, the court must determine that the challenged allegations are "so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." 5C *Wright & Miller* § 1380 (3d ed. 2004). A plaintiff may demonstrate prejudice if the answer unclearly articulates to which claims the affirmative defenses apply. *See, e.g., Westbrook v.*

*Paragon Sys., Inc.*, No. 07-0714-WS-C, 2007 U.S. Dist. LEXIS 88490, at *2 (S.D. Ala. Nov. 29, 2007) (disapproving of "shotgun pleading of affirmative defenses" when they fail to distinguish among multiple claims presented in a complaint).

"Even where technically appropriate and well-founded, [however,] motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party." *Clark*, 152 F.R.D. at 70 (internal quotations omitted.) A Rule 12(f) motion to strike a defense constitutes "'a drastic remedy which is disfavored by the courts and infrequently granted.'" *Banks v. Realty Mgmt. Serv., Inc.*, No. 1:10cv14, 2010 WL 420037, at *1 (E.D. Va. Jan. 29, 2010) (*quoting Clark*, 152 F.R.D. at 70). Therefore, even if a court grants a Rule 12(f) motion, "the general practice is to grant the defendant leave to amend." *Id.* (*citing* 5C *Wright & Miller* § 1381 (3d ed. 2004)).

## V. Analysis

### A. A Split of Authority Exists Among District Courts

#### 1. No Court of Appeals Has Addressed This Issue

Prior to the Supreme Court's decisions in *Twombly* and *Iqbal*, the United States Court of Appeals for the Fourth Circuit held that general statements of affirmative defenses were sufficient provided they gave plaintiffs fair notice of the defense. *See Clem v. Corbeau*, 98 F. App'x 197, 203 (4th Cir. 2004), *available at* 2004 WL 906503 (finding that the defendant's answer "sufficiently encapsulated the elements" of an affirmative defense to have put the plaintiff on notice); *Ferguson v. Guyan Mach. Co.*, No. 93-2593, 1995 WL 20793, at *5 (4th Cir. Jan. 20, 1995) (finding that the reason for the plaintiff's termination, proffered by the defendant in its answer, "was definite enough to put [the plaintiffs] on fair notice of the reason which [the

defendant] proffered at trial"). Since *Twombly* and *Iqbal*, however, neither the Fourth Circuit nor any other court of appeals has ruled on the question presented: whether *Twombly* and *Iqbal* extended the federal pleading requirements to a defendant's affirmative defenses.

### 2. The Majority of District Courts Have Held That the *Twombly-Iqbal* Standard Applies to Affirmative Defenses

Among those district courts to have considered the issue, a split of authority exists. The majority of district courts have extended the *Twombly-Iqbal* standard to a defendant's pleading of affirmative defenses.[3] These courts have found that the "same logic holds true for pleading affirmative defenses [as for pleading a complaint] - without alleging facts as part of the

---

[3] *See, e.g., Palmer*, 2010 WL 2605179, at *5-6; *Local 165 v. DEM/EX Group Inc.*, No. 09-1356, 2010 WL 971811, at *2 (C.D. Ill. Mar. 11, 2010); *OSF Healthcare Sys. v. Banno*, No. 08-1096, 2010 WL 431963, at *2 (C.D. Ill. Jan. 29, 2010); *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 649-50 (D. Kan. 2009); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, No. 09-61436-CIV, 2009 WL 4800542, at *1 (S.D. Fla. Dec. 11, 2009) (finding that defendants must provide fair notice of affirmative defenses and the grounds on which they rest); *Burget v. Capital W. Sec., Inc.*, No. CIV-09-1015-M, 2009 WL 4807619, at *2 (W.D.Okla. Dec. 8, 2009); *Bank of Montreal v. SK Foods, LLC*, No. 09 C 3479, 2009 WL 3824668, at *2 (N.D. Ill. Nov. 13, 2009) (holding that affirmative defenses must meet pleading standards set forth in Rules 8 and 9); *Tracy v. NVR, Inc.*, No. 04-CV-6541L, 2009 WL 3153150, at *7 (W.D.N.Y. Sept. 30, 2009); *Greenheck Fan Corp. v. Loren Cook Co.*, No. 08-cv-335-jps, 2008 WL 4443805, at *1-2 (W.D. Wis. Sept. 25, 2008); *In re Mission Bay Ski & Bike, Inc.*, Nos. 07 B 20870, 08 A 55, 2009 WL 2913438, at *6 (Bankr. N.D. Ill. Sept. 9, 2009); *Kaufmann v. Prudential Ins. Co. of Am.*, No. 09-10239-RGS, 2009 WL 2449872, at *1 (D. Mass. Aug. 6, 2009) (court inclined to think that defendants have the same Rule 8 obligations as do plaintiffs); *Shinew v. Wszola*, No. 08-14256, 2009 WL 1076279, at *3 (E.D. Mich. Apr. 21, 2009); *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008) ("Mere conclusory assertions are not sufficient to give plaintiffs notice of the counterclaims and defenses and, thus, do not meet Rule 8(a)'s pleading standards."); *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, No. 05-CV-0233-WWJ, 2008 WL 4391396, at *1 (W.D. Tex. Sept. 22, 2008); *Safeco Ins. Co. of Am. v. O'Hara Corp.*, No. 08-CV-10545, 2008 WL 2558015, at *1 (E.D. Mich. June 25, 2008); *Holtzman v. B/E Aerospace, Inc.*, No. 07-80551-CIV, 2008 WL 2225668, at *2 (S.D. Fla. May 29, 2008); *United States v. Quadrini*, No. 2:07-CV-13227, 2007 WL 4303213, at *3-4 (E.D. Mich. Dec. 6, 2007); *Home Mgmt. Solutions, Inc. v. Prescient, Inc.*, No. 07-20608, 2007 WL 2412834, at *3 (S.D. Fla. Aug. 21, 2007).

11

affirmative defenses, [a] [p]laintiff cannot prepare adequately to respond to those defenses." *Holtzman*, 2008 WL 2225668, at *2. Many district courts have found that "[i]t makes no sense to find that a heightened pleading standard applies to claims but not to affirmative defenses." *Hayne*, 263 F.R.D. at 649-50.

### 3. A Minority of District Courts Have Declined to Extend the *Twombly-Iqbal* Standard to Affirmative Defenses

A number of district courts expressly have declined to extend the *Twombly-Iqbal* standard to affirmative defenses, however.[4] These courts have found that *Twombly* and *Iqbal* addressed only Rule 8(a), and no case has expressly extended those decisions to Rules 8(b) and 8(c).[5] *See, e.g., Charleswell*, 2009 WL 4981730, at *4; *Westbrook*, 2007 U.S. Dist. LEXIS 88490, at *1. In addition, at least one court has noted that "[t]he factual allegations contained in the complaint

---

[4] *See, e.g, Ameristar Fence Prods., Inc. v. Phoenix Fence Co.*, No. CV-10-299-PHX-DGC, 2010 WL 2803907, at *1 (D. Ariz. July 15, 2010); *McLemore v. Regions Bank*, Nos. 3:08cv0021, 3:08cv1003, 2010 WL 1010092, at *13 (M.D. Tenn. Mar. 18, 2010); *Holdbrook v. SAIA Motor Freight Line, LLC*, No. 09-cv-02870-LTB-BNB, 2010 WL 865380, at *2 (D. Colo. Mar. 8, 2010); *Charleswell v. Chase Manhattan Bank, N.A.*, No. 01-119, 2009 WL 4981730, at *4 (D.V.I. Dec. 8, 2009); *Romantine v. CH2M Hill Eng'rs, Inc.*, No. 09-973, 2009 WL 3417469, at *1 (W.D. Pa. Oct. 23, 2009); *First Nat'l Ins. Co. of Am. v. Camps Servs., Ltd.*, No. 08-cv-12805, 2009 WL 22861, at *2 (E.D. Mich. Jan. 5, 2009); *Westbrook*, 2007 U.S. Dist. LEXIS 88490, at *2.

[5] Rule 8(a)(2) states: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a).
In contrast, Rule 8(b) states: "In responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it . . . ," Fed. R. Civ. P. 8(b)(1)(A), and Rule 8(c) states: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c)(1).
Courts ruling in this fashion suggest that the language in the rules differs enough to warrant differing pleading standards: "Neither [Rule 8(b) nor Rule 8(c)] expresses a requirement that the answer 'show' the defendant is entitled to prevail on its affirmative defense." *Westbrook*, 2007 U.S. Dist. LEXIS 88490, at *2.

and answer are necessarily incorporated into a defendant's recitation of affirmative defenses," rendering "[i]t . . . absurd to require a defendant to re-plead every fact relevant to an affirmative defense." *Baum v. Faith Techs., Inc.*, No. 10cv144, 2010 WL 2365451, at *3 (N.D. Okla. June 9, 2010) (assuming, without finding, that *Twombly* applies to a defendant's assertion of affirmative defenses, but finding that the defendant adequately pled its affirmative defenses even under that standard). Furthermore, a defendant risks waiving any affirmative defense it does not plead. *Id.* (*citing Wanamaker v. Albrecht*, No. 95-8061, 1996 WL 582738, at *5 (10th Cir. 1996)).

### 4. The Western District of Virginia Joined the Majority View

The Eastern District of Virginia has not yet addressed this issue. *See Hanzlik v. Birach*, No. 1:09cv221 (JCC), 2009 WL 2147845 (E.D. Va. July 14, 2009) (considering a motion to strike affirmative defenses that failed to argue *Twombly* or *Iqbal*).[6] On June 24, 2010, however, the Western District of Virginia aligned itself with the majority of district courts to have considered the issue, holding that the *Twombly-Iqbal* standard applies to a defendant's assertion of affirmative defenses and striking a number of the affirmative defenses raised. *Palmer*, 2010 WL 2605179, at *5-7. In *Palmer*, the court held that the pleading standard set forth in *Twombly* and *Iqbal* applies to defendants asserting affirmative defenses. *See id.* The court recognized the split of authority among the district courts, noting that each party had presented "well-reasoned

---

[6] In *Hanzlik*, the Court recognized that "[f]orcing" a defendant to include all applicable law or detailed factual statements in their assertions of affirmative defenses is "contrary to the spirit of Rule 8," and noted its preference for the parties to develop the legal merits of defenses through discovery. 2009 WL 2147845, at *4; *see also United States v. Gwinn*, No. 5:06-cv-267, 2006 WL 3377636, at *2 (S.D. W. Va. Nov. 20, 2006) ("While Defendant's allegation of estoppel as an affirmative defense is not accompanied by extensive factual allegations, it puts the parties on notice of a legal defense the merits of which may be developed in the course of discovery."). The *Hanzlik* Court did not address the issue now before this Court, however.

case law authorities on both sides of the issue." *Id.* at *4. The court found, however, that "*Twombly* and *Iqbal* strongly suggest that the same heightened pleading standard should also apply to affirmative defenses . . . [because] [t]o require less of a defendant sets the pleading bar far too low." *Id.* at *5.

The *Palmer* court noted that "[a] requirement that an affirmative defense be pleaded in accordance with the *Twombly-Iqb[a]l* standard simply means . . . that it be pleaded in a way that is intelligible, gives fair notice, and is plausibly suggested by the facts." *Id.* This pleading standard does not "necessarily require[] the assertion of underlying evidentiary facts. . . . At a minimum, however, some statement of the ultimate facts underlying the defense must be set forth, and both its non-conclusory factual content and the reasonable inferences from that content, must plausibly suggest a cognizable defense available to the defendant." *Id.* Accordingly, the court struck a number of the defendant's affirmative defenses because they were "too conclusory to provide fair notice to the plaintiff," and because the defenses "fail[ed] to contain a factual basis entitling it to be assumed true." *Id.* at *6.

### B.     This Court Finds the Majority View Persuasive

This Court finds the majority view persuasive. "[T]he purpose of pleading requirements is to provide enough notice to the opposing party that indeed there is some plausible, factual basis for the assertion and not simply a suggestion of possibility that it may apply to the case." *Hayne*, 2009 WL 5171779, at *3. "An even-handed standard as related to pleadings ensures that the affirmative defenses supply enough information to explain the parameters of and basis for an affirmative defense such that the adverse party can reasonably tailor discovery." *Burget*, 2009 WL 4807619, at *2. Accordingly, "the considerations of fairness, common sense and litigation

14

efficiency" dictate that litigants articulate complaints and affirmative defenses according to the same pleading standards. *Palmer*, 2010 WL 2605179, at *5.

The Court recognizes that application of this pleading standard bears consequence to Defendants. As noted above, the language of the Federal Rules of Civil Procedure differ, suggesting requirements as to pleadings that may differ as well. *Compare* Fed. R. Civ. P. 8(a)(2), *with* Fed. R. Civ. P. 8(b), 8(c). Indeed, "[t]here may well be occasions when it would be reasonable to impose stricter pleading requirements on a plaintiff who has significant time to develop factual support for its claims, as opposed to a defendant who has only twenty-one days to respond to a complaint and assert any affirmative defenses." *Palmer*, 2010 WL 2605179, at *4. Defendants have abbreviated time to decide which defenses to raise, and they do so at the risk of waiving them. *See Gwinn*, 2006 WL 3377636, at *2 (noting that a defendant finds himself or herself "in the precarious position of either pleading his [or her] affirmative defenses without knowing for certain whether they will succeed, or not pleading the defenses and risk waiving them").

However, *Twombly* and *Iqbal* require only minimal facts establishing plausibility, a standard this Court presumes most litigants would apply when conducting the abbreviated factual investigation necessary before raising affirmative defenses in any event. Moreover, "Rule 15 of the Federal Rules of Civil Procedure contemplates . . . motions to amend pleadings on that basis of relevant facts learned during discovery, and such motions should be liberally granted," meaning that the flexibility of amendment softens any painful blow of heightened pleading standards. *Palmer*, 2010 WL 2605179, at *5; *see* Fed. R. Civ. P. 15.

Finally, Form 30, appended to the Federal Rules of Civil Procedure pursuant to Rule 84,[7] underscores the notion that a defendant's pleading of affirmative defenses should be subject to the same pleading standard as a plaintiff's complaint because it includes factual assertions in the example it provides. The Form includes within it a suggestion that minimal facts be asserted before raising a statute of limitations defense. *See Hayne*, 2009 WL 5171779, at *4 (*citing* Form 30, ¶ 6, which states: "The plaintiff's claim is barred by the statute of limitations because it arose more than ___ years before this action was commenced.")).

---

[7] Rule 84 states: "The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Fed. R. Civ. P. 84.

1. **Affirmative Defenses 2, 4, 5, 6, 7, 8, 10, 11, 12, and 14**

The Court has before it an Answer to Amended Complaint that lists each defense under a section entitled "Affirmative Defenses."[8] (Answer 10-12.) (Docket No. 21.) Plaintiff has moved to strike most of these defenses on varying grounds. Each of the above-listed defenses will be stricken because they fail to meet the *Twombly-Iqbal* pleading standard. "[E]ach is too conclusory to provide fair notice to the plaintiff, and each fails to contain a factual basis entitling it to be assumed true." *Palmer*, 2010 WL 2605179, at *6. Accordingly, the Court will GRANT Francisco's Renewed Motion to Strike with respect to Affirmative Defenses 2, 4, 5, 6, 7, 8, 10, 11, 12, and 14.

---

[8] Rule 8(c) does not define the contours of permissible affirmative defenses, *see* Fed. R. Civ. P. 8(c), and some debate exists as to whether certain defenses can serve as affirmative defenses. *See In Re Mission Bay Ski & Bike, Inc.*, 2009 WL 2913438, at *5 (recognizing disagreement over whether "failure to state a claim" constitutes an affirmative defense); *compare Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, No. C08-04058 MHP, 2010 WL 2507769, at *6 (N.D. Cal. June 22, 2010 (noting that, "despite its inclusion in Civil Form 30, failure to state a claim under Rule 12(b)(6) is more properly brought as a motion and not an affirmative defense"), *with Ruffin v. Frito-Lay, Inc.*, No. 09-CV-14664, 2010 WL 2663185, at *3 (E.D. Mich. June 10, 2010) (stating that "the failure-to-state-a-claim defense can be pleaded as an affirmative defense but may also be raised . . . by a motion to dismiss"); *compare Home Mgmt. Solutions, Inc.*, 2007 WL 2412834, at * 3 (finding that an affirmative defense that disputes the existence of damages should be treated as a specific denial rather than an affirmative defense), *with Ruffin*, 2010 WL 2663185, at *4 (recognizing a claim that punitive damages are unavailable as an affirmative defense).

Because the parties have not placed this issue squarely before the Court, however, the Court need not consider whether the Affirmative Defenses raised by Verizon South properly can serve as affirmative defenses. Moreover, the Court notes that, in light of the applicability of the *Twombly-Iqbal* pleading standard, the better practice would be to plead minimal facts sufficient to establish the plausibility of any alleged affirmative defense. This manner of pleading serves to narrow the issues for discovery and propels the litigation forward so that the Court may swiftly and efficiently hear the merits of a plaintiff's claims. This Court, however, does not make the finding that heightened pleading is required in all instances.

## 2. Affirmative Defenses 3 and 15

The Court finds that the *Ellerth/Faragher* defense, although not a bar to Francisco's claim, as Verizon South admits (Def.'s Opp'n 7), may have some relevance to the issues before the Court. Francisco contends she was fired because she complained that Verizon South engaged in an unlawful employment practice by maintaining a racially hostile work environment. Whether she availed herself of any corrective or preventative measures offered by Verizon South may bear on the issue of whether Francisco reasonably believed she opposed unlawful employment practices. *See Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338-39 (4th Cir. 2006) (stating that an employee's opposition activity may be protected "when it responds to an employment practice that the employee *reasonably believes* is unlawful"). Accordingly, the Court cannot find that the challenged allegations are "so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." 5C *Wright & Miller* § 1380 (3d ed. 2004). Therefore, the Court will DENY Francisco's Renewed Motion to Strike with respect to Affirmative Defense 3.[9]

Similarly, as to Affirmative Defense 15, although "[a] reservation of unpled defenses is not a defense of any kind, much less an affirmative one," *In re Mission Bay Ski & Bike, Inc.*, 2009 WL 2913438, at *5, the Court perceives no prejudice to Francisco resulting from this pleading. Accordingly, the Court will DENY Francisco's Renewed Motion to Strike with respect to Affirmative Defense 15. *See Clark*, 152 F.R.D. at 70.

---

[9] In addition, the Court notes that this type of pleading fosters communication among parties because it puts the opposing party on notice of an issue relevant to the asserted claims. It makes trial "less a game of blind man's b[l]uff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958). The Court encourages such efficiency in pleading.

### 3. Affirmative Defenses 9 and 13

The Court finds that Verizon South has pled sufficient facts to support Affirmative Defenses 9 and 13. Specifically, in Affirmative Defense 9, Verizon South contends that Francisco failed to mitigate her damages because she "did not apply for a single Verizon job within the thirty-day window after being notified that she had been selected for a Reduction in Force and before being taken off the payroll." (Answer 11.) In Affirmative Defense 13, Verizon South has stated that any recovery will be "barred by the after-acquired evidence doctrine" because Francisco "[lied] during a Security Investigation and in leaving work early in order to work at a second job." (Answer 11-12.) The Court finds that these Affirmative Defenses contain sufficient factual basis to survive Francisco's Renewed Motion to Strike. Therefore, the Court will DENY Francisco's motion with respect to Affirmative Defenses 9 and 13.

### 4. No Undue Motions Practice

Nothing inappropriate has occurred in this case, but the Court, nonetheless, makes its finding that *Twombly* and *Iqbal* apply to the defenses raised here with some hesitation because it does not, in any fashion, seek to encourage undue motions practice regarding pleadings. Hopefully, the exchange of some minimal factual information when asserting defenses will serve to clarify a party's position rather than give rise to a new area of dispute. The Eastern District of Virginia long has held its litigants to an efficient discovery practice, and discovery is the preferred mechanism for rooting out the basis of an opponent's claims and defenses. Especially given the limited in time which defendants must answer, the application of the *Twombly-Iqbal* standard to pleading defenses in no way abrogates the Court's preference for discovery. It is the Court's firm hope that litigants will continue to develop the heart of their claims rather than turn

to secondary events to gain litigative advantage. Undue motions practice by either side always fails to serve the interest of justice.

## VI. Conclusion

For the foregoing reasons, the Court will GRANT IN PART and DENY IN PART Francisco's Renewed Motion to Strike. (Docket No. 23.) The Court will GRANT Francisco's motion with respect to Affirmative Defenses 2, 4, 5, 6, 7, 8, 10, 11, 12, and 14. The Court will DENY Francisco's motion with respect to Affirmative Defenses 3, 9, 13, and 15.

The Court will GRANT Verizon South leave to amend its Answer. *See Banks*, 2010 WL 420037, at *1 (*citing* 5C *Wright & Miller* § 1381 (3d ed. 2004)). The Court will ORDER Verizon South to file its Amended Answer within five (5) days of the date of entry hereof.

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 7-29-10